**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Billy L. TALLEY, Defendant–Appellant.**

**No. 00–6378.**

United States Court of Appeals, Sixth Circuit.

Dec. 3, 2001.

See also 164 F.3d 989.

Before JONES and CLAY, Circuit Judges, and DOWD, Senior District Judge.*

DOWD, J.

This appeal presents the sole issue of whether the district court erred in denying the motion of Billy Talley for a new trial on the basis of newly discovered evidence. A jury previously found Talley guilty of two counts of solicitation to commit the murder of an FBI agent and a witness informant. On April 12, 1997, the district court sentenced Talley to a term of imprisonment of 170 months. His conviction and sentence were affirmed on appeal. *United States v. Talley*, 164 F.3d 989 (6th Cir. 1999).

On October 9, 1998, during the pendency of the appellate process, Talley's counsel filed the motion for a new trial based on a September 22, 1998 letter that he had received from Assistant United States At-

torney Frederick H. Godwin. The letter provided information about Ronnie Tyler, who had been a pivotal witness during Talley's trial. The importance of Tyler's testimony is reflected in the opinion affirming the lower court, at pages 996–97. Godwin's letter stated:

> On or about April 15, 1996, the Bureau of Alcohol, Tobacco & Firearms served a search warrant on the home of Ronnie Tyler in Bauxite, Arkansas. The search warrant authorized ATF and local agents to search for firearms in Ronnie Tyler's home. Ronnie Tyler is a convicted felon, as you know. Subsequently, an ATF informant, Eugenia Marie Smith, last reported address, 2111 Cloud Lane, Benton, Arkansas, advised ATF that Tyler stated, prior to the search, that he had been warned by Special Agent John Seaberg to remove any guns he might have in his house. The informant stated that she assisted in removing several weapons from Tyler's house prior to the search. The search warrant revealed one firearm and some ammunition in a safe that Tyler's wife claimed only she had the combination for. Ronnie Tyler denies he was ever warned of the search warrant by Special Agent John Seaberg. Special Agent Seaberg denies that he specifically warned Tyler using the words "search warrant," but acknowledged that Tyler learned about the search warrant because of Seaberg's words and actions. Tyler was aware of ATF's presence in his neighborhood and Seaberg told him to "keep his nose clean."

The district court delayed a ruling on the motion until the direct appeal was completed. The motion was referred to Magistrate Judge Breen, who filed an ex-

---

* The Honorable David D. Dowd, Jr., Senior United States District Judge for the Northern District of Ohio, sitting by designation.

tensive and well-reasoned Report and Recommendation. He recommended denial of both the motion and the request for an evidentiary hearing. The district court approved the Report and adopted the Recommendation.

We review the denial of the motion for a new trial for abuse of discretion. *United States v. Frost*, 125 F.3d 346, 382 (6th Cir.1997). We find no abuse of discretion. Our analysis follows.

The relationship between Talley and Tyler began as jailer/inmate when Tyler was incarcerated at the Shelby County jail and Talley was employed as a jailer at the facility. Tyler became an informant for Talley. After Talley was arrested on charges in January of 1996 that had been developed by an informant named Marr working with Special Agent Young of the FBI, he contacted Tyler and, in an unrecorded conversation, asked him to take care of Marr and Young. Tyler testified that Talley wanted Marr and Young killed because he did not want to go to jail or lose his job. At that point, Tyler contacted a lawyer who in turn contacted the United States Attorney's Office, who assigned Special Agent Seaberg to interview Tyler and conduct an undercover investigation of Talley. Under Seaberg's directions, Tyler managed to tape a telephone conversation with Talley which was partially described in *Talley*, 164 F.3d at 994.

*Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) and *United States v. Frost*, 125 F.3d 346 (6th Cir. 1997), *cert denied*, 525 U.S. 810, 119 S.Ct. 40, 142 L.Ed.2d 32 (1998), both deal with the issue of a new trial motion where the government fails to divulge exculpatory evidence prior to trial in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Kyles* and *Frost* hold that the defendant must establish that the evidence was "material" in that there is a reasonable probability that, had the evidence been disclosed to the defendant, the result of the proceeding would have been different. *Kyles*, 514 U.S. at 433–34, 115 S.Ct. 1555; *Frost*, 125 F.3d at 382.

After receiving the objections to the magistrate judge's Report and Recommendation, the district court declared, after noting that Talley's allegations concerning the newly discovered evidence were being considered in the light most favorable to Talley, that "it was apparent that this newly discovered evidence would not have changed the persuasive value of the tape recording of the conversation with Talley." J.A. at 59. Continuing, the district court concluded that there was no "reasonable probability" that, if the alleged conduct of Seaberg had been disclosed, the outcome would have been different. *Id.* at 60.

We find that the magistrate judge and the district court each applied the correct standard in evaluating the newly discovered evidence.

The blemishes on the character of Tyler were well exposed during the trial. Both the magistrate judge and the district court opined that one additional black mark did not create a reasonable probability of a different result, especially in view of the fact that such a disclosure would not change the evidence of the taped conversation between Tyler and Talley, which provided uncontroverted evidence of the crime.

Application of the abuse of discretion standard of review to the denial of the motion for a new trial based on the newly discovered evidence clearly commands an affirmance and so we AFFIRM the judgment of the district court denying the motion for a new trial.